**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2023-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

BARRY LORENZO CAREY,
a/k/a LORENZO CAREY, and
MALIK CAREY,

     Defendant-Appellant.

_____

Submitted November 7, 2018 – Decided December 11, 2018

Before Judges Geiger and Firko.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 05-10-1905.

Halscott Megaro, PA, attorneys for appellant (Patrick M. Megaro, on the brief).

Dennis Calo, Acting Bergen County Prosecutor, attorney for respondent (William P. Miller, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel; Catherine A. Foddai, Special Deputy Attorney General/Acting Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Barry Lorenzo Carey appeals from the denial of his second petition for post-conviction relief (PCR) without an evidentiary hearing. We hold that defendant's second petition was untimely under the time limits imposed by Rule 3:22-12(a)(2), which cannot be relaxed. Accordingly, we affirm.

I.

Defendant was charged with kidnapping and sexually assaulting a mentally incapacitated victim in April 2003, and attempting to sexually assault two other victims four months later. Defendant gave a statement to police and his residence was searched. Defendant moved to suppress his statement and the results of the search of his residence. The trial court conducted a testimonial suppression hearing. Sergeant Alan Lustman of the Sex Crimes and Child Abuse Unit of the Bergen County Prosecutor's Office and Detective Kevin O'Boyle of the Hackensack Police Department testified for the State. Defendant did not testify or present any witnesses at the hearing.

In addition to arguing defendant was not told by police why they wanted to talk to him and that the interview was conducted in a hostile and coercive environment, defense counsel argued defendant did not sign the Miranda[1] form

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-2023-17T4

or the consent to search form. Defendant claimed he only signed and initialed a document giving the police permission to retrieve his wallet at his request. Defendant contended he did not understand the paper to be a Miranda form. Instead, he claimed he was under the impression anything he signed was simply to gather his personal belongings in order to facilitate providing the items to the police. In the alternative, defense counsel argued the forms were not executed knowingly and intelligently due to the purported coercive environment and because defendant "did not understand and appreciate what was going on."

Following lengthy oral argument, the suppression motion judge issued an oral decision denying the motions. Based on Lustman's and O'Boyle's collective testimony, which the motion judge found credible and reliable, the judge made the following findings. Defendant voluntarily agreed to go to the police station. He was not handcuffed. His girlfriend accompanied him. Defendant was taken to an interview/coffee room where Lustman advised him of his Miranda rights both verbally and in writing. First, Lustman read the Miranda form to defendant. After verbally indicating he understood each of his rights, defendant read the form himself, initialed it, and answered the questions "yes." Defendant then signed the form in the presence of Lustman and O'Boyle, and printed his name alongside. He signed the Miranda form after being advised of his rights and

having the opportunity to read the form. Lustman then asked defendant if he would agree to be interviewed without an attorney. Defendant said that he would and the interview began. The interview started at about 7:40 a.m. and ended around 10:00 a.m. The length of the questioning was not coercive in nature. Defendant was offered the opportunity to use the bathroom and was asked if he wanted anything to drink. No threats, promises, or other inducements were made to defendant. The police did not use any trickery or ruse to get defendant to agree to go to police headquarters.

The judge found <u>Miranda</u> rights were properly administered, defendant indicated he understood his rights, answered each question on the form "yes," placed his initials alongside each, and signed and printed his name on the form. The judge then analyzed the totality of the circumstances to determine whether defendant waived his rights voluntarily. The judge noted defendant was thirty-one years old, had at least some college, and was employed at Community Medical. The judge concluded there was "nothing in the circumstances presented regarding [defendant's] age, intelligence, [or] education which would lead you to conclude that he did not understand what was being done, what was going on around him." The judge held defendant waived his rights voluntarily.

The suppression motion judge also relied on the testimony of Lustman and O'Boyle with regard to the search of defendant's residence. The judge found the police searched defendant's residence without a search warrant based on his consenting to the search. O'Boyle read and explained the consent to search form to defendant. He then let defendant read the form. Defendant indicated he understood the consent to search and signed it, telling Lustman and O'Boyle he did not have a problem with them searching his residence. Lustman and O'Boyle also signed the form. The form advised defendant of his right to refuse to give consent to the search and that he was waiving that right. The judge found defendant voluntarily executed the consent to search, with no threats or coercion by police, and otherwise valid. As to the scope of defendant's consent to search, the judge held the consent was to search the entire residence for evidence, not just to obtain his wallet or identification. Therefore, the scope of the consent given by defendant was not exceeded.

Tried to a jury in 2006, defendant was convicted of kidnapping, the aggravated assault of one victim, and his attempts to lure two other victims into a motor vehicle with the purpose of committing a crime against them. All of the victims were clients of Friendship House, a non-profit vocational rehabilitation agency in Hackensack that serves clients who are developmentally, emotionally,

A-2023-17T4

or physically disabled. Defendant was sentenced to an aggregate term of twenty-nine years imprisonment, subject to a twenty-one-year and three-month period of parole ineligibility. The trial court also imposed Megan's Law registration, community supervision for life, and applicable fines and penalties. The judgment of conviction was entered on October 17, 2006.

On direct appeal, we affirmed his convictions and sentence. State v. Carey, No. A-1783-06 (App. Div. Apr. 19, 2010), certif. denied, 205 N.J. 520 (2011). The facts underlying his convictions are set forth in our opinion and need not be repeated here.

Defendant told his trial counsel that he did not sign the Miranda form or the consent to search form. Although counsel argued defendant did not sign either form, she did not retain an expert to analyze the validity of the signatures. After defendant's conviction, defendant's mother hired Dr. Joe B. Alexander, a certified forensic document examiner, to analyze photocopies of the Miranda form and consent to search form to determine if defendant's purported signatures were genuine. Dr. Alexander examined copies of the Miranda form, consent to search, and five exemplars of defendant's genuine signature.

In his report dated April 9, 2014, Dr. Alexander opined the signature of defendant on the Miranda form "is consistent with the known signatures of

[defendant], but since a photocopy was all that was presented for examination, I was unable to determine how the signature was affixed to this document." However, Dr. Alexander concluded it is "highly unlikely that [defendant] recorded the answers and affixed his initials" to the Miranda form.

Regarding the consent to search, Dr. Alexander opined the author of defendant's signature "is highly likely someone other than [defendant]. Significant differences were found in all aspects of this signature when compared to the known signature of [defendant]."

Defendant filed a timely first PCR petition on October 17, 2011. He retained attorney Lora B. Glick to represent him in his application for PCR. The petition did not allege trial counsel was ineffective for failing to retain a forensic document examiner to determine if defendant's purported signatures on the Miranda form and the consent to search form were genuine. On November 3, 2011, the petition was dismissed without prejudice subject to refiling at a later date.

Defendant filed an amended PCR petition on May 24, 2013, raising identical issues to those presented in his original petition but with additional exhibits attached. Glick represented defendant on the amended petition. Glick took no action with regard to the forged signature allegation. On November 22,

2013, the PCR judge heard oral argument and took the matter under advisement. On February 7, 2014, the PCR judge issued a letter opinion and order denying the amended petition without an evidentiary hearing, finding the petition time-barred under the five-year time limit imposed by Rule 3:22-12(a)(1). The judge also considered the merits of defendant's arguments, and found defendant failed to present a prima facie case of ineffective assistance of counsel. Defendant appealed. Glick also represented defendant in the appeal. We affirmed, finding no merit in any of defendant's arguments. State v. Carey, No. A-2988-13 (App. Div. Oct. 1, 2015), certif. denied, 224 N.J. 247 (2016).

Defendant filed a second PCR petition on September 30, 2016. He retained different counsel for the second PCR proceeding. The second petition alleged ineffective assistance of PCR counsel on his amended PCR petition. Following oral argument, the PCR judge issued a lengthy oral decision denying the petition without an evidentiary hearing. The judge found defendant's second petition was untimely, having been filed more than one year after the denial of the amended petition.

The PCR judge also considered the merits of the petition. The judge held defendant failed to meet either prong of the test for establishing a prima facie case of ineffective assistance of counsel, finding defendant failed to show

counsel's performance was deficient, or that there was a reasonable probability that but for appellate counsel's conduct, the outcome of the proceeding would have been different. Accordingly, the judge denied the petition without an evidentiary hearing.

The PCR judge noted the suppression motion judge found defendant did sign the <u>Miranda</u> form after it had been read to him and after defendant had the opportunity to read it himself. The PCR judge further noted the motion judge also found defendant read and signed the consent to search form.

The PCR judge also concluded even if defendant's statement and the evidence from the search of defendant's residence were suppressed, defendant did not demonstrate this would have changed the outcome of the trial as there was overwhelming evidence of guilt presented at trial.

This appeal followed. Defendant argues:

> THE TRIAL COURT ERRED WHEN IT FOUND DEFENDANT'S PETITION FOR POST CONVICTION RELIEF WAS TIME BARRED BECAUSE A FUNDAMENTAL INJUSTICE OCCURRED.
>
> A. This Court Should Review the Claim on the Merits to Prevent a Fundamental Injustice Because Defendant Has Presented Strong and Uncontradicted Evidence That Law Enforcement Fabricated Evidence and That Evidence Played a Central Role in His Conviction.

B.    Under a Logical Construction of the Rules, Defendant's Motions for Post-Conviction Relief Were Timely; In the Alternative, Defendant Has Demonstrated Excusable Neglect.

C.    Merits of the Ineffective Assistance of Counsel Claim

1.    Counsel Was Ineffective For Failing to Investigate and Present Evidence to Corroborate Defendant's Claim That His Signature on the Miranda Form Was Forged.

2.    Counsel was Ineffective For Failing to Investigate and Present Evidence to Corroborate Defendant's Claim That His Signature on the Consent To Search Was Forged.

3.    Counsel's Strategy was Objectively Unreasonable.

4.    Prejudice.

We conduct a de novo review when the PCR court did not hold an evidentiary hearing on the claim defendant now raises on appeal. State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018).

In his second PCR petition filed on September 30, 2016, defendant argues his first PCR counsel was ineffective for failing to investigate and present evidence to corroborate defendant's claim that his signatures on the Miranda form and consent to search were forged. The PCR judge found defendant's second PCR petition was time-barred because he waited more than two and one-

10

half years after his first PCR petition was denied on February 7, 2014. We agree defendant's claim is time barred.

Rule 3:22-4(b) states that "[a] second or subsequent petition for post-conviction relief shall be dismissed unless: (1) it is timely under [Rule] 3:22-12(a)(2)[.]" Rule 3:22-12(a)(2) provides:

> Notwithstanding any other provision in this rule, no second or subsequent petition shall be filed more than one year after the latest of:
>
> (A) the date on which the constitutional right asserted was initially recognized by the United States Supreme Court or the Supreme Court of New Jersey, if that right has been newly recognized by either of those Courts and made retroactive by either of those Courts to cases on collateral review; or
>
> (B) the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence; or
>
> (C) the date of the denial of the first or subsequent application for post-conviction relief where ineffective assistance of counsel that represented the defendant on the first or subsequent application for post-conviction relief is being alleged.

Defendant's second PCR petition was not timely under Rule 3:22-12(a)(2)(A) because he claims no newly recognized constitutional right.

11

Defendant's second petition was not timely under Rule 3:22-12(a)(2)(B). Defendant's ineffectiveness claim is not based on evidence or information that could not have been discovered earlier through the exercise of reasonable diligence because he knew Dr. Alexander had concluded it was highly unlikely the initials and answers on the Miranda form and his signature on the consent to search were his as of April 9, 2014. See State v. Brewster, 429 N.J. Super. 387, 399-400 (App. Div. 2013) (finding the defendant's PCR petition untimely under Rule 3:22-12(a)(2)(B) because he discovered "'the factual predicate for the relief sought'" in 2007 yet waited until 2010 to seek post-conviction relief).

Defendant's second petition is also untimely under Rule 3:22-12(a)(2)(C). Although it alleged ineffective assistance of counsel who represented defendant on his first PCR petition, defendant's second petition was not filed within one year of the date of the denial of his first PCR petition on April 27, 2007. Accordingly, the PCR court properly dismissed his second PCR petition under Rule 3:22-4(b)(1).

Defendant argues enforcement of the time bar would result in a fundamental injustice. However, that exception to the time limitations no longer applies to second PCR petitions. Jackson, 454 N.J. Super. at 294. The case law

cited by defendant predates the amendments to Rule 3:22-12 and Rule 1:3-4, and is no longer controlling.

Rule 1:3-4(c) was amended, effective since September 1, 2009, to prohibit the parties and the court from enlarging the time specified by Rule 3:22-12. Id. at 292. As such, "Rule 1:1-2(a), which generally provides that 'any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice[,]'" can no longer be invoked to relax the time limits imposed by Rule 3:22-12. Ibid.

As explained in Jackson:

> Like the simultaneous amendment to Rule 1:3-4(c), the amendment resulting in Rule 3:22-12(b) was intended "to make clear that the general time limits to file a petition for post-conviction relief as set forth in R. 3:22-12 cannot be enlarged or relaxed except as specifically set forth in R. 3:22-12(a)." Report of the Supreme Court Criminal Practice Committee 2007-2009 Term at 4-5 (Feb. 17, 2009).

> Finally, effective February 1, 2010, the Supreme Court again amended Rule 3:22-12 by adding a new subparagraph, Rule 3:22-12(a)(2), requiring that "no second or subsequent petition shall be filed more than one year after" the date one of three claims accrued, as defined in that subparagraph. The Court also added Rule 3:22-4(b), requiring second or successive petitions to be dismissed unless they alleged one of those three claims and were "timely under R. 3:22-12(a)(2)."

By mandating in Rule 3:22-12(a)(2) that the one-year time limit applied "[n]otwithstanding any other provision of this rule," the Supreme Court made clear that the late filing of a second or subsequent PCR petition could not be excused in the same manner as the late filing of a first PCR petition.

[Id. at 293.]

"Thus, enlargement of Rule 3:22-12's time limits is 'absolutely prohibited.'" Id. at 292 (citations omitted).

We do not reach the merits of defendant's remaining arguments because his second PCR petition was untimely under Rule 3:22-12(a)(2), and must be dismissed pursuant to Rule 3:22-4(b)(1). See id. at 297.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2023-17T4